# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Nehme Jafaar,

                Plaintiff,        Case No. 17-cv-10284

v.                                  Judith E. Levy
                                      United States District Judge

City of Dearborn Heights, et al.,
                                      Mag. Judge Anthony P. Patti
                Defendants.

_____/

## ORDER GRANTING DEFENDANT PIZZA HUT'S MOTION FOR JUDGMENT ON THE PLEADINGS [24]

This case arises out of an altercation between plaintiff Nehme Jafaar and defendant Brian Ziolkowski that occurred in the alley behind their workplaces. Ziolkowski called the Dearborn Heights police after he and plaintiff had a heated exchange of words, and the police arrested plaintiff. Plaintiff then brought this action against the City of Dearborn Heights, the officers involved in the arrest, Ziolkowski, and Pizza Hut, as Ziolkowski's employer. Plaintiff improperly named Pizza Hut as Ziolkowski's employer, as Ziolkowski's actual employer is Redberry Resto Brands, Int'l, Inc. ("Redberry"). (Dkt. 24 at 2.) Redberry now brings a

motion for judgment on the pleadings, asking the Court to dismiss each of the three counts against it. (Dkt. 24.)

For the reasons stated below, Redberry's motion is granted.

I. **Background**[1]

Plaintiff is the manager of the Lava Lounge, a hookah bar located in Dearborn Heights, Michigan. On February 21, 2016, one of plaintiff's employees called him outside to the dumpster area behind the bar so that plaintiff could ask the manager of the Pizza Hut next door, defendant Ziolkowski, to stop moving boxes from the Pizza Hut dumpster into the Lava Lounge dumpster.

When plaintiff arrived on the scene, Ziolkowski told him to "stop throwing away his 'fucking hallal boxes' into Pizza Hut's dumpster." (Dkt. 1 at 5.) Plaintiff explained to Ziolkowski that the offending boxes were not from Lava Lounge, but were instead from Dynasty Chicken, a neighboring restaurant. This explanation agitated Ziolkowski, who then "approached plaintiff in a threatening manner" and "wouldn't let plaintiff leave the area." (*Id.*) In response, plaintiff "identified himself as a Wayne

---

[1] Motions for judgment on the pleadings require the Court to construe all of the facts stated in the complaint as true, and this section recites them accordingly.

2

County Sherriff Deputy Reserve" and showed Ziolkowski his badge, to which Ziolkowski responded "fuck the police." (*Id.* at 6.)

As the altercation continued, plaintiff attempted to film Ziolkowski's conduct using his cell phone camera. When Ziolkowski saw plaintiff filming, he knocked the camera out of plaintiff's hand. Plaintiff pushed Ziolkowski away to prevent him from picking up plaintiff's phone, and plaintiff told the other Lava Lounge employees in the alley not to engage with Ziolkowski. Ziolkowski then began "verbally challenging anyone to hit him," and, when no one did, he called the Dearborn Heights police. (*Id.* at 7.) The officers arrived on the scene, took Ziolkowski's statement, and arrested plaintiff. Ziolkowski eventually declined to press charges.

Plaintiff brought this action against those involved in this incident, including the City of Dearborn Heights, the officers involved, Ziolkowski, and Redberry. Plaintiff asserted three claims against Redberry: intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent hiring and retention. (Dkt. 1 at 17-18, 21.) Redberry moves to dismiss each of those claims.

## II. Legal Standard

Redberry brings this motion under Fed. R. Civ. P. 12(c). Courts review motions brought under Fed. R. Civ. P. 12(c) under the same standard as those brought pursuant to Fed. R. Civ. P. 12(b)(6). *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007). When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Analysis

### a. Intentional Infliction of Emotional Distress

Redberry argues that plaintiff's intentional infliction of emotional distress claim fails for two reasons: first, it cannot be vicariously liable

4

when Ziolkowski's acts were beyond the scope of his employment with Redberry, and, second, even if they were within the scope of his employment, they were not extreme and outrageous. (Dkt. 24 at 16.) The Court need not reach the threshold issue of whether Ziolkowski acted within the scope of his employment because, for the reasons set forth below, plaintiff has not alleged that Ziolkowski engaged in "extreme and outrageous" conduct. *See Haverbush v. Powelson*, 217 Mich. App. 228, 233-34 (1996).

Under Michigan law, the "tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Haverbush*, 217 Mich. App. at 233-34.

A defendant's conduct is "extreme and outrageous" when it goes "beyond all possible bounds of decency, and . . . [is] atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999). Liability for intentional infliction of emotional distress requires something more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Conduct is not "extreme and outrageous" even if "the defendant has acted with an intent

5

which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602–03 (1985) (quoting *Restatement Torts, 2d*, § 46, comment d). Ultimately, the "test is whether 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Graham*, 237 Mich. App. at 674-75 (quoting *Roberts*, 422 Mich. at 603).

Here, plaintiff alleges that Ziolkowski engaged in "extreme and outrageous" conduct by "yelling obscenities such as 'stop throwing away [your] fucking halal boxes' into Pizza Hut's dumpster," "positioning himself face to face with [plaintiff] in a threatening manner," "verbally challenging" plaintiff to "strike him," making a "dishonest" police report, and disrupting plaintiff's business causing "the false arrest and imprisonment" of plaintiff. (Dkt. 30 at 12.) Plaintiff also explains that Ziolkowski "attacked what [plaintiff] cared for most: superb management at his place of business." (*Id.*)

Accepting all of these allegations as true, they do not describe "extreme and outrageous" conduct. The bar for showing such conduct is high, and the type of activity leading to intentional infliction of emotional distress liability is significantly more extreme than what occurred here. *See, e.g., Haverbush*, 217 Mich. App. at 234 (describing "an escalating series of acts over a two-year period" as "extreme and outrageous" when those acts involved specific death threats delivered to the plaintiff's home and left on his vehicle, and "a barrage of letters to [the plaintiff], to his daughter, and to his future in-laws, in which [the defendant] called him a compulsive liar, [and] threatened [the plaintiff's] fiancée with physical harm"); *Rosenberg v. Rosenberg Bros. Special Account*, 134 Mich. App. 342, 351 (1984) (finding that the defendant engaged in "extreme and outrageous" conduct when the defendant coerced the plaintiff, the wife of his deceased brother, into handing over her stake in the family business by using his complete control over the company's books and records, as well as the plaintiff's income, to "browbeat [her] into submission").

Though Ziolkowski may have escalated the situation unnecessarily, the verbal abuse and threats he directed towards plaintiff are exactly the type of "mere insults, indignities, [and] threats" Michigan courts do not

7

treat as "extreme and outrageous." *See Graham*, 237 Mich. App. at 674. These threats and insults did not involve someone using leverage to coerce plaintiff into an unwanted course of action or targeted harassment directed at plaintiff over an extended period of time. *See Haverbush,* 217 Mich. App. at 234; *Rosenberg*, 134 Mich. App. 342. Instead, plaintiff alleges an argument in which tempers flared and the police were called. Unfortunately, such disagreements happen daily. Intentional infliction of emotional distress is applicable to extraordinary situations involving conduct "utterly intolerable in a civilized community," not to situations involving verbal exchanges of "insults, indignities, [and] threats," like the one here. *See Graham*, 237 Mich. App. at 674.

For these reasons, plaintiff's intentional infliction of emotional distress claim against Redberry must be dismissed.

### b. *Negligent Infliction of Emotional Distress*

In addition to intentional infliction of emotional distress, plaintiff also alleges a vicarious liability cause of action for negligent infliction of emotional distress against Redberry.

The Supreme Court of Michigan "has never recognized the existence" of a negligent infliction of emotional distress cause of action.

*Hesse v. Ashland Oil, Inc.*, 466 Mich. 21, 24 (2002). But, to the extent that courts do recognize this claim, its elements are:

> (1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not presence, at least shock "fairly contemporaneous" with the accident.

*Samberg v. Detroit Water & Sewer Co.*, No. 14-CV-13851, 2015 WL 2084682, at *3 (E.D. Mich. May 5, 2015) (quoting *Hesse,* 466 Mich. at 34 (Kelly, J. dissenting)). This tort only applies to "the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Duran v. Detroit News, Inc.*, 200 Mich. App. 622, 629 (1993).

Plaintiff's complaint alleges only that "the acts of Defendants negligently inflicted emotional distress on Plaintiff." (Dkt. 1 at 19.) Plaintiff does not point to any third party with whom he had a "close relationship" who was harmed in the events giving rise to this lawsuit. *See Samberg*, 2015 WL 2084682 at *3. In his brief in response to Redberry's motion, plaintiff suggests that "multiple individuals who are

immediate to" plaintiff were harmed by Ziolkowski's conduct, but he does not further identify those individuals.. (Dkt. 30 at 13.)

Because plaintiff's complaint fails to allege harm to a third party with whom he has a "close relationship," this is not a case where "plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *See Duran*, 200 Mich. App. at 629. Accordingly, plaintiff's claim for negligent infliction of emotional distress is dismissed.

  *c. Negligent Hiring and Retention*

Plaintiff pleads a claim directly against Redberry, alleging that it was negligent in hiring and retaining Ziolkowski. Plaintiff fails to plead this claim with sufficient particularity to survive this motion.

Michigan courts recognize claims for negligent hiring and retention. *Hersh v. Kentfield Builders, Inc.*, 385 Mich. 410, 412 (1971). A plaintiff alleging negligent hiring must demonstrate the defendant's negligence using the familiar framework of duty, causation, breach, and damages. *Brown v. Brown*, 478 Mich. 545, 316-17 (2007).

At issue here is whether Redberry owed a duty to plaintiff. An employer holding its premises open to the public must take "reasonable care for the safety of [its] customers, patrons, or other invitees." *Hersh*,

385 Mich. at 412. When determining whether a duty existed, courts consider the "foreseeability of harm to the plaintiff, although the mere fact that an event is foreseeable does not impose a duty." *Brown*, 478 Mich. at 553 (quoting *Buczkowski v. McKay,* 441 Mich. 96, 101 (1992)) (internal quotations removed). In negligent hiring cases, harm is foreseeable and a duty exists when the employer "knew or should have known of his employee's propensities [to commit harm] and criminal record before commission of an intentional tort by [an] employee upon [a] customer." *Hersh*, 385 Mich. at 412. Comments or threats that do not "clearly and unmistakably threaten particular criminal activity" are not sufficient to impose this duty on an employer. *Brown*, 478 Mich. at 555.

Here, plaintiff does not allege any basis on which Redberry "knew or should have known of [Ziolkowski's] propensities" to commit harm. The complaint alleges that Redberry "determined the qualifications and lack of qualifications" of its employees, and concludes that it "negligently hired, trained, supervised and/or retained" those employees. (Dkt. 1 at 21.) Absent allegations of some reason that Redberry could have foreseen Ziolkowski's propensity to commit harm, such as a history of violent crimes or "clear[] and unmistakable[] threat[s of] particular criminal

11

activity," plaintiff's claim cannot go forward.[2] As currently stated, plaintiff's negligent hiring claim does not even include "a formulaic recitation of the elements of a cause of action," *see Twombly*, 550 U.S. at 555, let alone "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678.

Accordingly, plaintiff's negligent hiring claim is dismissed.

## IV. Conclusion

For the reasons set forth above, Redberry's motion for judgment on the pleadings is GRANTED.

IT IS SO ORDERED.

Dated: May 1, 2018  
Ann Arbor, Michigan

s/Judith E. Levy  
JUDITH E. LEVY  
United States District Judge

---

[2] Plaintiff relies on a single, unpublished decision of the Michigan Court of Appeals for the proposition that he is entitled to discovery to determine whether defendant knew or should have known of Ziolkowski's violent propensities. (Dkt. 30 at 15 (citing *Doe v. Borromeo,* No. 305162, 2012 WL 4215032 (Mich. Ct. App. Sept. 20, 2012).) That case is distinguishable because that plaintiff alleged that "Defendant hospital and its administrator and its employees were aware of or had knowledge of the inappropriate acts of the Defendant physicians . . . ." *Borromeo*, 2012 WL 4215032 at *4.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 1, 2018.

                                                s/Shawna Burns
                                                SHAWNA BURNS
                                                Case Manager