# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Nehme Jaafar,

               Plaintiff,      Case No. 17-cv-10284

v.                           Judith E. Levy
                              United States District Judge

City of Dearborn Heights,
Christopher Papalexis, Jordan     Mag. Judge Anthony P. Patti
Dottor, Brian Ziolkowksi, and
Pizza Hut,

               Defendants.

_____/

# OPINION AND ORDER GRANTING DEFENDANTS CITY OF DEARBORN HEIGHTS, CHRISTOPHER PAPLEXIS, AND JORDAN DOTTOR'S MOTION FOR SUMMARY JUDGMENT [43] AND DISMISSING REMAINING BATTERY CLAIM AGAINST DEFENDANT BRIAN ZIOLKOWSKI WITHOUT PREJUDICE [39]

Plaintiff Nehme Jaafar's ("plaintiff") claim against defendants City of Dearborn Heights, and Officers Papalexis and Dottor (collectively "City defendants") stem from plaintiff's arrest following a dispute between plaintiff and defendant Brian Ziolkowski. Their dispute became physical, and Ziolkowski called the City of Dearborn Heights police to report an assault. This report ultimately resulted in plaintiff's arrest, which

plaintiff now challenges under the Fourth and Fourteenth Amendments of the United States Constitution, and state tort law. Plaintiff also brought various state claims against Ziolkowski for conduct that occurred during their dispute.

All defendants have moved for summary judgment. In his response in opposition to the City defendants' motion, plaintiff "does not oppose dismissal of City of Dearborn Heights as a defendant in this matter," (Dkt. 50 at 2), so the Court will dismiss City of Dearborn Heights and rule on the merits only as to the remaining individual officers. In his response to Ziolkowski's motion, plaintiff does not oppose dismissal of the defamation claim against Ziolkowski. (Dkt. 47 at 5.) Accordingly, only one count of assault and battery remains as to Ziolkowski.

## I. Background

Ziolkowski and plaintiff characterize the dispute at issue differently, but the basis of their dispute is clear and was caught on camera. In short, plaintiff and Ziolkowski had a confrontation behind their respective businesses about the use of a dumpster. Ziolkowski, a Pizza Hut manager, believed employees from Lava Lounge, where plaintiff is a manager, were wrongfully dumping boxes into Pizza Hut's

dumpster. The dispute escalated into a physical confrontation. Plaintiff raised his phone toward Ziolkowski's face, Ziolkowski then shoved plaintiff's hand or arm causing him to drop the phone, and plaintiff pushed back. Relevant to this motion, Ziolkowski returned to Pizza Hut and called City of Dearborn Heights Police to report that he had been assaulted.

Although parts of the subsequent police investigation arising out of Ziolkowski's report are disputed, the general contours are not. Officers Jordan Dottor and Christopher Papalexis (collectively "defendant officers") were dispatched to Pizza Hut on February 21, 2016. (Dkt. 50 at 53.) Ziolkowski told the defendant officers that plaintiff "head butted" Ziolkowski during a dispute. (Dkt. 43-4 at 15.) He also told the officers that, at some point during the dispute, plaintiff showed a badge[1] and shouted "I'm a police officer! You're Done!" (Dkt. 50 at 55; Dkt. 43-3 at 19; Dkt. 43-10 at 8.) Both defendant officers observed that Ziolkowski had

---

[1] Plaintiff is a CERT (Community Emergency Response Team) Reserve Officer with the Wayne County Sheriff's Department. As a reserve officer, plaintiff has an identification badge. A CERT officer is not afforded full police authority. For example, plaintiff cannot arrest people and is monitored by a supervising deputy. (Dkts. 43-7 at 12–13; 50 at 102.) Plaintiff testified in his deposition that a CERT Reserve Officer is not a police officer. (Dkt. 43-7 at 13.)

a swollen lip. (Dkt. 43-3 at 20; Dkt. 43-4 at 13–14.) Ziolkowski told the officers there was no video evidence and he did not tell them that he had initiated contact with plaintiff. (Dkt. 43-3 at 20.)

Defendant officers then went to Lava Lounge, where they interviewed a Lava Lounge employee and plaintiff. (Dkt. 50 at 34–35.) At Lava Lounge, the officers took plaintiff's "oral statement." (Dkt. 43-7 at 14–15.) Plaintiff confirmed that there was a dispute between himself and Ziolkowski over some boxes. Plaintiff admitted to showing a badge during the dispute and that the two "came together." (Dkts. 43-3 at 22; Dkt. 43-4 at 16.) But plaintiff maintains that he denied any physical contact between himself and defendant. (Dkt. 39-6 at 54–55; Dkt. 39-7 at 77–78.) The officers reported that plaintiff stated he may have forgotten to use the word "reserve" when holding up his badge (*id.*), but in his subsequent statements, plaintiff asserted that he did, in fact, correctly identify himself. (Dkt. 43-7 at 21.) Defendant officers maintain that plaintiff did not tell the officers that he was assaulted by Ziolkowski, and he did not offer surveillance video. (Dkt. 39-7 at 79-80; Dkt. 39-3 at 48; Dkt. 43-8 at 15:34:30.)

Defendant officers also took a statement from an employee, Jadallah El-Husseini Fadlallah ("Fadlallah")[2] who was an eyewitness to the alleged assault. Fadlallah told the police that, during the confrontation, plaintiff had showed a badge and identified himself as a police officer, and that plaintiff and Ziokowski "came together" and plaintiff may have headbutted Ziolkowski. (Dkts. 43-3 at 20, 43-4 at 15.) After speaking with both Fadlallah and plaintiff, the officers returned to Pizza Hut. (*Id.*)

Eventually, the officers came back to the Lava Lounge, and they arrested plaintiff for assault and impersonating a police officer. (Dkt. 43-10.) Plaintiff was held for a few hours and then released. (Dkt 43-7 at 27.) After an investigation, the charges against plaintiff were dropped. (*Id.* at 12.) Plaintiff stated in his deposition that "[o]ther than smart comments," the police did not use any physical violence or direct any abusive language toward him during the investigation. (*Id.* at 24.)

According to plaintiff, defendant officers made a few omissions during their investigation. For instance, the officers refused to take the

---

[2] Although there are multiple spellings used for Mr. Fadlallah's name, this is how his name is spelled in Fadlallah's deposition and in plaintiff's brief.

5

statement of Lava Lounge's owner, Angela Jaafar, who could have shown them video footage of the incident.[3] (Dkt. 50 at 70.) Nor did the police officers ask to or take steps to investigate the dumpsters or boxes that were the subject of dispute; both officers confirm that they did not assess the dumpster or the boxes, because, in their view, the boxes were irrelevant. (Dkt. 43-3 at 19–20; Dkt. 43-4 at 13.)

## II. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt.*

---

[3] Though not questioned on the date of the incident, Angela Jaafar's statement was taken by police after plaintiff's arrest. In her written statement, she recounts that she offered a verbal statement to the officers on the night of the incident who explained to her that they already had taken a statement from an employee and that was "all they needed." (Dkt. 50 at 69–70.)

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

The moving party "bear[s] the initial burden of demonstrating the absence of a genuine issue of material fact on at least one essential element." *Stiles v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets this burden, the non-moving party must then point to "facts in the record raising a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324).

## III. City Defendants' Motion for Summary Judgment

### a. Federal Claims

Plaintiff asserts various claims under 42 U.S.C. § 1983. "In civil suits pursuant to 42 U.S.C. § 1983 for money damages, qualified immunity protects a public official from being sued as long as the official 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579 (2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). On summary judgment, the Court will first consider whether the facts "viewed in the light most favorable to the plaintiff,

'show the officer's conduct violated a constitutional right.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Only if there is sufficient showing as to a constitutional violation must a court continue its analysis as to whether the right is "clearly established." *Id.*

### i. § 1983 Equal Protection: Discrimination on the Basis of Religion and Race

Plaintiff argues that defendant officers violated his equal protection rights by believing Ziolkowski's report and subsequently arresting only plaintiff.

The Equal Protection Clause protects against "official conduct discriminating on the basis of" a protected status. *Washington v. Davis*, 426 U.S. 229, 239 (1976). This includes discrimination based on race and religion. *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1057 (6th Cir. 1996). One way for plaintiffs to demonstrate an equal protection violation in the context of police conduct is through "selective enforcement." *Id.* Where a police officer selectively enforces a law only against one protected group, even if probable cause exists, he violates the constitution. *Wren v. United States*, 517 U.S. 806, 813 (1996).

A successful demonstration of selective enforcement is very difficult. There are three prongs:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Gardenshire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000) (quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)). The plaintiff can demonstrate discriminatory purpose and effect through direct or circumstantial evidence so long as she shows that "similarly situated individuals of a different race were not" targeted. *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 534 (6th Cir. 2002) (quoting *United States v. Armstrong*, 517 U.S. 456, 465, (1996)).

Plaintiff's theory of discrimination is not exactly selective enforcement, but rather selective belief in an eyewitness. He argues that defendant officers only believed the white witness, Ziolkowski's account, but not plaintiff's, who is Arab American and Muslim. He further suggests that the officers' failure to take the owner of Lava Lounge's

statement and to request video evidence at the scene demonstrates discrimination. (Dkt. 50 at 24, 66.) Plaintiff does not address the fact that the officers believed and acted upon another Lava Lounge employee, Fadlallah's eyewitness testimony. Defendants counter that there is insufficient evidence of discriminatory purpose to create an issue of triable fact.

Defendants are correct. There is no direct evidence on the record to suggest the officers acted with a discriminatory purpose. Nor is there circumstantial evidence to raise an issue of fact on this element. Both defendant officers consistently maintain that they responded to an assault; took statements from the accuser, the suspect, and an eyewitness; and arrested plaintiff based on what they believed to be probable cause for two crimes. Nothing in the deposition testimony or any other evidence provided suggests that the purpose was anything other than investigating a reported assault.

Plaintiff cannot rest on mere allegations to rebut evidence that supports summary judgment. Because defendants persuasively demonstrated in their motion an absence of discriminatory purpose, a necessary element of an equal protection violation, plaintiff must point

to facts in the record to show that there is, in fact, an issue of fact as to this element. *See Stiles*, 819 F.3d at 847 (citing *Celotex*, 477 U.S. at 324). Plaintiff has not done this.

In his discussion on equal protection, plaintiff cites only two pieces of evidence on the record to support his argument that "Defendant Officers were zeroed in on a mission . . . to arrest Plaintiff" based on his race, national origin, or religion.[4] (Dkt. 50 at 23.) First, he points to the officers' refusal to take the Lava Lounge's owner's statement before arresting plaintiff. But plaintiff fails to demonstrate how a refusal to take the owner's testimony when the police explained they had another statement, is evidence of discriminatory purpose. Nor does plaintiff square the fact that defendant officers took the statement of Fadlallah, an eyewitness who is therefore arguably more valuable to the investigation than the owner of Lava Lounge who did not witness the alleged incident. It is unclear why the taking of one employee's eyewitness account over the owner's account is evidence of discriminatory intent.

---

[4] Although there is some talk of national origin in both defendants' and plaintiff's briefs, the complaint only brought this claim based on race and religion. (*See* Dkt. 1, Counts I & II.)

Second, plaintiff cites to a Wayne County Sheriff's internal investigation memorandum. A deputy sheriff investigated the incident between Ziolkowski and plaintiff to determine whether plaintiff should be disciplined as a CERT officer for using his reserve sheriff badge during the dispute. (Dkt. 50 at 64–66.) The deputy concluded that plaintiff should not be disciplined, and in doing so, suggested that defendant officers' failure to get video evidence at the scene was unreasonable. (*Id.* at 66.) The deputy who authored the memorandum states that there "would appear to be no reason why the responding officers wouldn't have obtained that information the night of the incident other than effort or motive." (*Id.*) But this statement that some unidentified "motive" influenced defendant officers' decision not to pursue video footage during their initial investigation is not sufficient to raise an inference of discriminatory purpose based on race or religion. These two pieces of evidence do not support an inference of discriminatory purpose.

Because there is no evidence of discriminatory purpose, the Court need not look at the remaining elements of an equal protection violation; the absence of one element sufficiently demonstrates that plaintiff's constitutional rights were not violated. Nor does the Court need to

analyze whether the right was clearly established. Because there was no equal protection violation, defendants are entitled to qualified immunity on this claim.

## ii. *§1983 Fourth Amendment Unreasonable Search and Seizure*

Plaintiff also challenges his arrest under the Fourth Amendment. The Fourth Amendment of the U.S. Constitution "prohibits unreasonable searches and seizures, including arrests." *Alman v. Reed*, 703 F.3d 887, 896 (6th Cir. 2013). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). As to probable cause, the Sixth Circuit states:

> For a police officer to have probable cause for arrest, there must be facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense. . . . The probability of criminal activity is assessed under a reasonableness standard based on an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.

*Crockett*, 316 F.3d at 580 (internal citations and quotations omitted). Eyewitness identification may be sufficient to create probable cause unless there is some reason for the officer to suspect the eyewitness was not telling the truth. *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). And when investigating whether there is probable cause, "a police officer has no duty to search for exculpatory facts if the facts within the officer's knowledge establish probable cause." *Dodd v. Simmons*, 655 F. App'x 322, 327 (6th Cir. 2016) (citing cases). In other words, "[o]nce an officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect." *Id.* (citing *Klein v. Long*, 275 F.3d 544, 551 (6th Cir. 2001); *Ahlers*, 188 F.3d at 371; *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988)).

Here, defendant officers had probable cause to believe that plaintiff had assaulted Ziolkowski and therefore did not violate plaintiff's Fourth Amendment rights. It is undisputed that Ziolkowski told the officers he had been headbutted by plaintiff. Both officers observed a lip injury that corroborated a possible physical altercation. Moreover, Fadlallah, an eyewitness, confirmed that the two "came together." Plaintiff, himself, confirmed to the officers that there was an altercation. Based on the three

statements and both officers' observation of Ziolkowski's swollen lip, police officer had reasonable grounds to conclude plaintiff assaulted Ziolkowski. Probable cause was established and therefore the officers were under no obligation to continue their investigation and obtain a warrant prior to the arrest. Though perhaps prudent, police officers were not then legally obligated to take the Lava Lounge's owner's statement[5], nor did they have to ask for or watch the video under the circumstances. They were entitled to instead "pursue the arrest of the suspect."

The Court need not make a holding on probable cause for the crime of impersonating a police officer.[6] Because there was probable cause for

---

[5] Notably, it is undisputed that the owner was not an eyewitness to the dispute. The employee who was, in fact, interviewed by the officers was an eyewitness. Police officers are entitled to rely on credible eyewitness accounts in their determination of probable cause. *See Ahlers*, 188 F.3d at 371.

[6] Defendant officers also assert that they had probable cause to arrest plaintiff for impersonating a police officer. The fact that plaintiff is a CERT Sheriff creates a wrinkle in the probable cause analysis for this crime. Without reaching a decision on this point, the officers likely had probable cause as to this crime, as well. As with the assault, police officers heard from Ziolkowski, Fadlallah, and plaintiff, himself, that plaintiff had shown a badge during the dispute. According to police, Ziolkowski reported that plaintiff stated "I'm a police officer! You're Done!" The police also stated that plaintiff admitted during his initial statement that he may have forgotten to say "reserve" when presenting his badge. Jadlallah also suggested to the officers that plaintiff had identified himself as a police officer. Plaintiff now maintains that he qualified his statement with the word "reserve," but does not rebut with evidence in the record that, at the time of arrest, plaintiff did not tell the officers he may have

assault, the officers did not violate plaintiff's constitutional rights. As with his equal protection claim, the Court therefore need not analyze whether the right was clearly established. Defendants have demonstrated that there is no material issue of fact with regards to probable cause and they are entitled to summary judgment on this claim.

### b. State Law Claims

Plaintiff brings both negligent and intentional tort claims against defendants. The Michigan Supreme Court's decision in *Odom v. Wayne County* succinctly outlines the applicable analysis for state law tort claims brought against governmental employees. For lower ranking governmental employees, as here, courts must first "determine whether the plaintiff pleaded an intentional or a negligent tort." 482 Mich. 459, 479 (2008). "If the plaintiff pleaded a negligent tort, [the court must] proceed under MCL 691.1407(2)," which provides for statutory immunity. *Id.* "If the plaintiff pleaded an intentional tort, [the court must] determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* test," which looks to

---

forgotten the word "reserve." But since the record is unclear on the differences between a CERT reserve officer and a police officer, it chooses not to reach a decision on whether there was probable cause on these grounds.

whether the governmental employee is entitled to governmental immunity at common law. *Id.*

### i. Statutory Immunity: NIED & Gross Negligence

Plaintiff claims negligent infliction of emotional distress (NIED) and "[g]ross [n]egligence under MCL 691.1407." (Dkt. 1 at 17.) But "MCL 691.1407 'does not *create* a cause of action' . . . [and instead] a plaintiff must first establish that the governmental employee defendant owed a common-law duty to the plaintiff." *Rakowski v. Sarb*, 269 Mich. App. 619, 627 (2006) (quoting *Beaudrie v. Heanderson*, 465 Mich. 124, 139 (2001) (emphasis in original)). Therefore, plaintiff's claim of gross negligence under this statute is not an independent cause of action. Instead, the NIED claim must be examined to determine whether statutory immunity exists.

The *Odom* court held:

If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

(a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

(b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

(c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

482 Mich. at 479–80. Accordingly, the statute "requires that an individual's conduct amount to gross negligence to survive a defense of governmental immunity under that subsection." *Sudul v. City of Hamtramck*, 221 Mich. App. 455, 490 (1997). The statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407 (8)(a).

In this case, there is no issue of material fact as to whether the officers' actions "amounted to gross negligence." They did not. By the plaintiff's own admission, the officers did not use abusive language or physical force. It is undisputed that the police officers responded to a call regarding an alleged assault, took three statements and observed Ziolkowski's injury, and, based on probable cause, arrested plaintiff.. There is nothing on the record suggesting reckless action on the part of either responding officer. Viewed in the light most favorable to plaintiff, defendants are entitled to summary judgment on the NIED and gross negligence claims.

## ii. Individual Governmental Immunity: Intentional Torts

Plaintiff's claims of intentional infliction of emotional distress, false arrest, false imprisonment, and abuse of process are intentional torts. With respect to intentional torts, the *Odom* court explained:

If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* test by showing the following:

(a)  The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(b)  the acts were undertaken in good faith, or were not undertaken with malice, and

(c)  the acts were discretionary, as opposed to ministerial.

482 Mich. at 480. Malice has been described as "willful misconduct," "conduct . . . . that was intended to harm the plaintiff," or "wanton misconduct . . . show[ing] such indifference to whether harm will result." *Id.* at 475.

As a threshold matter, it cannot be disputed that when the officers were dispatched to Pizza Hut, they were acting within the scope of their

authority. Moreover, police duties in this capacity are largely discretionary. This leaves only whether the acts were taken "in good faith, or were not undertaken with malice."

For the same reasons the record fails to demonstrate the officers acted with gross negligence, the record is similarly devoid of any evidence of malice. The police responded to a call regarding a possible assault. The deposition testimony from both plaintiff and the police officers confirm that the police conducted a brief investigation, took statements, and acted based upon probable cause to arrest plaintiff. Plaintiff has not and cannot point to facts in the record suggesting that either officer had an "intent to harm plaintiff," or even showed "indifference to whether harm will result." The officers are therefore entitled to individual governmental immunity for all intentional tort claims asserted against them.

### iii. *Intentional Torts: The Merits*

Although the officers are all entitled to individual governmental immunity for intentional torts, plaintiff also fails to identify an issue of triable fact on the merits on each of these claims.

1. Intentional Infliction of Emotion Distress

Intentional Infliction of Emotion Distress (IIED) requires a plaintiff to demonstrate "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (citing *Doe v Mills*, 212 Mich. App. 73, 91 (1995)).

As previously set forth, there is nothing in the record to support a claim of recklessness, much less extreme or outrageous conduct on the part of the defendant police officers. Plaintiff states there was no physical force or abusive language and his description of what happened conforms to a standard preliminary investigation into a possible assault. No action supported in the record was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious." *See id.* Even if the officers were not entitled to immunity, which they are, this claim would fail on the merits.

## 2. False Arrest and Imprisonment

"To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003) (citations omitted). "Where the facts are undisputed, the determination whether probable cause exists is a question of law for the court to decide." *Id.* "[A] police officer, acting in good faith with probable cause within the scope of his authority, is not liable for false arrest or false imprisonment even though the arrest is subsequently found to be baseless." *Blackman v. Cooper*, 89 Mich. App. 639 (1979). The state probable cause analysis is no different from the discussion under federal law. *See supra* Section III.a.ii. Because the record demonstrates that the officers acted based upon probable cause as to an assault, this claim fails.

## 3. Abuse of Process

To recover under a theory of abuse of process, "a plaintiff must plead and prove (1) an ulterior purpose, and (2) an act in the use of process that is improper in the regular prosecution of the proceeding." *Bonner v. Chicago Title Ins. Co.*, 194 Mich. App. 462, 472 (1992) (citing

*Friedman v. Dozorc*, 412 Mich. 1, 30–31 (1981)). "There must be some corroborating act that demonstrates the ulterior purpose." *Id.* (citing *Vallance v. Brewbaker*, 161 Mich. App. 642, 646 (1992)). "A bad motive alone will not establish an abuse of process." *Id.* Moreover, a plaintiff's claim of abuse of process will fail when it "has to do with the *initiation of criminal proceedings*, not the misuse of process.'" *Garcia v. Thorne*, 520 F. App'x 304, 307 (6th Cir. 2013) (emphasis added) (explaining that an allegedly wrongful arrest of plaintiff "has to do with the initiation of criminal proceedings, not the misuse of process"); *cf. Friedman v. Dozorc*, 412 Mich. 1, 14 (1981) ("The action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue.").

Plaintiff's claim of abuse of process fails for multiple reasons. First, he has not demonstrated an "ulterior motive," nor an action that corroborates an ulterior purpose. As set forth, there is no evidence on the record of racial or religious discrimination. Plaintiff includes one sentence in his opposition brief to support the survival of this claim, stating "[a] jury can reasonably infer Defendants' arrest and seizure of Plaintiff was precipitated by an ulterior motive." (Dkt. 50 at 25 (citing

cases).) This statement does not point to facts in the record to support its assertion. In addition, this statement demonstrates that plaintiff's claim relates more to the officers' allegedly wrongful attempts to cause the "initiation of criminal proceedings" and not the misuse of legal process, itself. In fact, it is unclear whether there is even a "legal proceeding" at issue in this case that is being challenged. Plaintiff cites to no case that would support the conclusion that a police investigation is a "legal process" that may form the basis of an abuse of process claim. Even without immunity, plaintiff's abuse of process claim fails.

### iv. Defamation Per Se

Neither party briefed the remaining claim of defamation brought against defendants. Thus, it appears plaintiff has abandoned this claim. He states in his brief that defendants have failed to establish the absence of a genuine issue of material fact regarding "Counts VI, VII, XI, XII, and XIII." (Dkt. 50 at 24.) Conspicuously missing from this list is Count IX, defamation per se. A party is "deemed to have abandoned a claim when [the party] fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich. Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). The Court is particularly persuaded since plaintiff has given a

partial response only "arguing that summary judgment should be denied as to some claims while not mentioning others." *See Jackson v. Fed Express*, 766 F.3d 189, 195–96, 198 (2d Cir. 2014). The Court finds that plaintiff has abandoned his defamation claim.[7]

\* \* \*

In sum, the available evidence demonstrates that Officers Dottor and Parapalexis arrested plaintiff based upon probable cause that plaintiff had assaulted Ziolkowski. Further, there is no evidence to support plaintiff's claim that the officers acted with a discriminatory purpose during their investigation or in effectuating the arrest. Therefore, plaintiff's federal claims are dismissed. There is also no evidence of malice, extreme conduct, or any unlawful intentional conduct

---

[7] In any case, there is no evidence on the record to support an issue of material fact as to defamation. The record is devoid of factual support for the most basic element of defamation: that either defendant officer made a false statement about plaintiff. In his complaint, plaintiff says "the accusations that Plaintiff committed the crime of assault and battery and impersonating a police officer are false." (Dkt. 1 at 20.) But there is no evidence presented to show that the police officers made this statement about plaintiff or that it is false. To the extent plaintiff relies on Ziolkowski allegedly making false statements that were subsequently included in the police report, Michigan law recognizes an "absolute privilege that arises in the context of a defamation claim and covers any report of criminal activity to law enforcement personnel." *Eddington v. Torrez*, 311 Mich. App. 198, 203 (2015). Plaintiff's defamation claim fails.

against plaintiff, and therefore plaintiff's state law claims fail, as well. The officers are entitled to summary judgment because they have individual and statutory immunity and, in the alternative, because there is no triable issue of fact on the merits of the state tort claims.

## IV.    Ziolkowski's Motion for Summary Judgment

Because the Court is granting the City defendants' summary judgment in full, the state law battery claim against Ziolkowski is all that remains in this case. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (explaining that when all federal claims are dismissed before trial, dismissing the remaining state law claims is generally appropriate). Since the only federal questions in this case pertained to the City defendants and they are being dismissed, the case no longer retains federal character. Accordingly, the Court chooses not to rule on Ziolkowski's pending motion, because it declines to exercise supplemental jurisdiction over the remaining state law battery claim.

## V.    Conclusion

For the reasons set forth, defendants' motion is **GRANTED**. City of Dearborn Heights, Officer Jordan Dottor, and Officer Christopher Papalexis are **DISMISSED**.

The only remaining claim of assault and battery against Ziolkowski is **DISMISSED** without prejudice.

IT IS SO ORDERED.

Dated: January 17, 2019          s/ Judith E. Levy
      Ann Arbor, Michigan          JUDITH E. LEVY
                                 United States District Judge